******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# R. G.-R. *v.* S. R.*
## (AC 45572)

Alvord, Cradle and Westbrook, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant had previously been dissolved, appealed to this court from the judgments of the trial court resolving several postjudgment motions. On May 26, 2022, the trial court granted, inter alia, the defendant's motion to modify custody of the parties' minor child. After the plaintiff filed her appeal from the May 26, 2022 order, the trial court vacated its order of custody, and returned the minor child to the plaintiff. Subsequently, on October 26, 2022, the trial court awarded the defendant sole legal and physical custody of the minor child and ordered the plaintiff to have no contact with the minor child until further order of the court. The plaintiff amended her appeal to include the trial court's October 26, 2022 order. While this appeal was pending, the plaintiff filed a motion to modify the October 26, 2022 "custody and parenting time orders." The trial court granted the plaintiff's motion to modify as to parenting time only, leaving the custody portion of the order unchanged. The plaintiff did not amend her appeal to include the August 1, 2023 order. *Held*:

1. The plaintiff's challenges to the May 26 and October 26, 2022 custody and parenting orders were rendered moot because the orders were superseded by the custody and parenting order of August 1, 2023, and, accordingly, there was no practical relief this court could afford the plaintiff: despite the plaintiff's claims to the contrary, the August 1, 2023 order addressed both parenting time and legal custody of the minor child; moreover, the plaintiff's claim that the collateral consequences exception to the mootness doctrine applied, in that her reputation and livelihood would be threatened if those orders were left intact, was belied by the fact that the May 26, 2022 order was sealed by the trial court on the day it was issued, thus, the plaintiff failed to meet her burden of demonstrating that there was a reasonable possibility that prejudicial consequences would occur if the May 26 and October 26, 2022 judgments were left intact; furthermore, the plaintiff failed to demonstrate that her claim was reviewable under the capable of repetition, yet evading review exception to the mootness doctrine as she failed to

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

argue that there was a reasonable likelihood that the question presented in this case would arise again.

2. The trial court did not err in granting the defendant's motions for contempt alleging that the plaintiff wilfully violated court orders that required the parties to engage in family counseling with the minor child, as there was sufficient evidence in the record to support the court's findings that the plaintiff repeatedly refused to do so, and this court was not left with the conviction that a mistake has been made.

3. This court concluded that the trial court erred in denying the plaintiff's motion for contempt alleging that the defendant violated the provision of the dissolution judgment that required him to pay the minor child's private school tuition through high school, as the trial court's denial was based on the mistaken belief that the dissolution judgment did not contain such a provision; accordingly, the judgment was reversed and the case was remanded for further proceedings on the plaintiff's motion.

Argued March 13—officially released July 9, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Prestley, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Nastri, J.*, issued an order of temporary custody of the minor child to the Commissioner of Children and Families, granted the motions for contempt filed by the defendant and the guardian ad litem, and denied the plaintiff's motion for contempt, and the plaintiff appealed to this court; subsequently, the court, *Moukawsher, J.*, awarded the defendant sole legal and physical custody of the minor child; thereafter, the court, *Moukawsher, J.*, denied the plaintiff permission to file a motion for reconsideration, and the plaintiff filed an amended appeal. *Appeal dismissed in part*; *reversed in part*; *further proceedings*.

*Brandon B. Fontaine*, with whom was *Meaghan E. Collins*, for the appellant (plaintiff).

*Richard A. Rochlin*, for the appellee (defendant).

*Opinion*

CRADLE, J. In this postjudgment dissolution matter, the plaintiff, R. G.-R., appeals from the judgments of the trial court awarding the defendant, S. R., sole legal and physical custody of their minor child. On appeal, the plaintiff challenges postjudgment orders made by the court on May 26 and October 26, 2022. As to the May 26, 2022 judgment, the plaintiff claims that the court erred by granting the defendant's motion to modify custody and motions for contempt filed by the defendant and the guardian ad litem, and denying a motion for contempt that she filed. As to the October 26, 2022 judgment, she claims that her constitutional right to procedural due process was violated when the court modified custody without affording her notice and a hearing and that the court failed to base the modification on the best interest of the minor child or a substantial change in circumstances. We dismiss as moot the plaintiff's appeal from the May 26, 2022 judgment, except the portions of the appeal that challenge the court's contempt rulings, which we affirm in part and reverse in part. We also dismiss as moot the plaintiff's appeal from the October 26, 2022 judgment.

The following procedural history is relevant to our resolution of this appeal. The parties' marriage was dissolved on January 7, 2013. Pursuant to that judgment, the parties would share joint legal and physical custody of the minor child.

Beginning in June, 2016, the plaintiff began to levy accusations against the defendant claiming, inter alia, sexual abuse by him of the minor child.[1] These allegations prompted the involvement of the police, the

---

[1] The parties' parenting conflicts began before this time and the procedural history set forth herein is representative of the tumultuous history of this case. Indeed, the parties' filings became so prolific that the court issued an order pursuant to Practice Book § 25-26 (g) requiring that they request leave to file motions with the court. Even with that order in place, there have been more than four hundred docket entries in this case since the date of dissolution.

Department of Children and Families (department) and the court. Although the plaintiff's allegations ultimately were unsubstantiated by the department, the ensuing investigations of those allegations contributed to the alienation of the minor child from his father. In May, 2017, the court ordered reunification therapy between the defendant and the minor child.

On May 22, 2018, the parties agreed to have a clinical psychologist perform a comprehensive custody evaluation and to sign all necessary releases and to cooperate with the designated psychologist. On May 25, 2018, the court, *Simón, J.*, appointed Stephen Humphrey, PhD, a clinical psychologist, to perform that custody evaluation. As a result of that evaluation, Humphrey opined, inter alia, that the plaintiff's "vehement and intense antipathy toward [the defendant] . . . is the primary cause of [the minor child's] fierce and unequivocal rejection of his father."

In March, 2019, after almost three full years had elapsed without the defendant seeing the minor child, the court, *Simon, J.*, again ordered reunification therapy for the defendant and the minor child. At that time, the court warned that it would strongly consider removing the minor child from the plaintiff's custody if she did not fully cooperate with the reunification therapy.

In October, 2019, the parties filed competing applications for an emergency ex parte order of custody of the minor child, which were both denied. They also both filed motions for modification seeking sole custody of the minor child. Also in October, 2019, the plaintiff sought to enjoin the defendant from having the child continue with therapy. In November, 2019, the defendant moved to hold the plaintiff in contempt for failing to bring the child to therapy.

On May 26, 2022, after seventeen days of trial, the court, *Nastri, J.*, issued a memorandum of decision,

wherein it decided several of the parties' pending motions.[2] The court found, inter alia, that the plaintiff "hates [the defendant] with every fiber of her being. She has done everything in her power to prevent [the minor child] from having any relationship with his father. She has manipulated the court, [the department], therapists, medical providers and the police by twisting facts, telling half-truths, making threats and withholding key information, all in her single-minded effort to prevent [the defendant] from having a relationship with his son. She has also treated clear and unambiguous court orders as suggestions, completely ignoring them when it suited her purpose." The court explained: "[The minor child] has a fundamental right to have a relationship with his father. He will never have that relationship or even a chance to have it, as long as he is in [the plaintiff's] custody. It is in [the minor child's] best interest for him to be in an environment in which [the plaintiff] does not have the opportunity to manipulate him or thwart his relationship with his father." The court concluded that the minor child was in "immediate physical danger from his surroundings" and that "[c]ontinuation in [the plaintiff's] home is contrary to [his] welfare."

---

[2] The court heard the following motions: The plaintiff's October 8, 2019 ex parte application for custody (docket entry #388.05) and motion for modification (docket entry #388.07), the defendant's October 10, 2019 ex parte application for custody (docket entry #389.00) and motion to modify custody (docket entry #390.00), the plaintiff's October 25, 2019 motion for order (docket entry #392.00), the defendant's November 19, 2019 motion for contempt (docket entry #399.00), the guardian ad litem's December 5, 2019 and January 7, 2020 motions for contempt (docket entries #403.00 and #406.00), the plaintiff's September 2, 2020 ex parte application for custody (docket entry #418.00), the defendant's September 14, 2020 motion to modify (docket entry #420.00) and December 18, 2020 motion for contempt (docket entry #430.00), the plaintiff's May 12, 2021 motion for contempt and sanctions (docket entries #433.00 and #433.01), the defendant's May 24, 2021 ex parte application for custody (docket entry #439.00) and the plaintiff's October 21, 2021 motion to expedite (docket entry #455.00).

The court's rulings on many of these motions are not relevant to this appeal. Those that are relevant to this appeal are discussed herein.

Because the minor child had not been with the defendant in nearly six years, the court found that it would not be in his best interest to suddenly be placed in the defendant's custody and, accordingly, issued an order of temporary custody placing the minor child in the care and custody of the Commissioner of Children and Families (commissioner). The court also granted two motions for contempt filed by the defendant, finding that the plaintiff wilfully violated a clear and unambiguous order as to each motion, but declined to impose sanctions as to either contempt finding. The court also granted two motions for contempt filed against the plaintiff by the minor child's guardian ad litem. The court declined to impose sanctions as to one of those motions, but, as to the other, ordered the plaintiff to pay her portion of the guardian ad litem's fees. The court also denied a motion for contempt filed by the plaintiff.[3] The plaintiff appealed from that May 26, 2022 judgment.

On July 25, 2022, the juvenile court, *Taylor, J.,* vacated the May 26, 2022 order placing the minor child in the custody of the commissioner, finding that he was not at imminent risk of physical harm. The court returned the matter to the appropriate court for further action.

On July 28, 2022, the defendant filed an application for an emergency ex parte order and a motion to modify custody seeking sole custody of the minor child. On that same day, the court, *Nastri, J.,* granted the defendant's application for an emergency ex parte order and ordered that he would have "sole legal custody" and that the plaintiff would not have visitation. The plaintiff was granted permission to file an emergency motion to vacate that order.

---

[3] The bases of the motions for contempt and the court's findings will be discussed more fully subsequently in this opinion.

On August 10, 2022, the court, *Moukawsher, J.*, held a hearing on the emergency motions and issued a decision the next day, wherein it found that there was no basis for an emergency order granting sole custody to the defendant and vacated the ex parte order effective August 20, 2022, when the child would be returned to the plaintiff.

On August 18, 2022, the court, *Moukawsher, J.*, held a hearing on the issue of where the minor child would attend secondary school. Following the hearing, the court issued a decision wherein it "rescind[ed] its order that [the child] be returned to [the plaintiff]" and ordered that the child would attend boarding school in Rhode Island and would remain in the defendant's custody until leaving for school. The court ordered that the plaintiff would have no contact with the minor child for the first five weeks of school and that the defendant would have sole legal custody of the minor child during that period. The court also ordered that the defendant not contact the minor child for those five weeks, but that the minor child could "communicate about what he needs with [the defendant] or with the [guardian ad litem] and they may respond." The court indicated that the orders were temporary and a "test of both parents." The court advised: "The court will soon issue other orders to help this along. The parties will need a plan for what happens after the first five weeks at school. The court will enter new orders in the coming weeks. In the meantime, it will be watching as best it can through the [guardian ad litem]. Any party sabotaging [the minor child's] launch into life will have the court to answer to. Its next orders will be shaped by it."

On October 19, 2022, the court, *Moukawsher, J.*, ordered the plaintiff to file a proposal regarding reunification therapy and ordered the defendant to file a response. The plaintiff filed her proposal on October

25, 2022, in which she asserted that reunification therapy was unnecessary and asked for "equal parenting time during parents' weekend and beyond, and legal custody of [the minor child]." She further alleged that "reunification therapy is not required or appropriate and should not be a prerequisite in the reunification of the child and his mother, whom he has not seen in nearly three months. The plaintiff again requests this court appoint an attorney for the minor child or at least a guardian ad litem who will speak with the child as instructed and convey the thoughts and wishes to the court of the person who is the subject of this proceeding ([the minor child]), and to otherwise meet the duties of a [guardian ad litem]. As this proceeding is supposed to be about [the minor child], his voice—which has been improperly silenced—is essential to proceed further. The child told the [guardian ad litem] he misses his mother. This court should grant equal parenting time to the mother, if not more, during the upcoming parents' weekend and beyond."

On the next day, October 26, 2022, the court, *Moukawsher*, *J.*, determined that the plaintiff's proposal was made in bad faith. The court explained: "By inviting proposed orders about custody and visitation, the court gave [the plaintiff] a chance to show that she is not still playing a ceaseless and cynical game with the court in which her goal remains to frustrate [the defendant's] attempt to reunify with [the minor child]. She rejected that chance with her latest filing dated October 25, 2022. [The plaintiff's] filing suggests [that] the court wanted her to engage in therapy to reunify *her* with [the minor child]. She and her counsel know that is not true. The only question discussed, expressly and in detail, has been her participating in the therapy intended to reunify [the minor child] *with* [*the defendant*]." (Emphasis in original.) The court awarded the defendant sole legal

and physical custody of the child, ordered that the plaintiff may have no contact with the minor child until further order of the court, and ordered the defendant to continue with reunification therapy and that the parties would each be responsible for one half of the reunification therapist's charges. After being denied leave to file a motion for reconsideration, the plaintiff amended her appeal to challenge the October 26, 2022 judgment.

On June 26, 2023, while this appeal was pending, the plaintiff filed a motion to modify the court's October 26, 2022 "custody and parenting time orders."[4] On August 1, 2023, after an evidentiary hearing, the court granted the plaintiff's motion as to parenting time only and indicated that "[a]ll other orders remain in place unchanged."

On December 15, 2023, the plaintiff filed a request for leave to file a motion to modify the court's August 1, 2023 order pertaining to the legal custody of the minor child, requesting that the court order that the parties share joint legal custody. The court denied her request for leave to file the motion.

We begin by addressing the issue of whether the August 1, 2023 judgment rendered moot the plaintiff's appeal of the May 26 and October 26, 2022 custody and parenting orders. "Mootness implicates [the] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . Because mootness implicates subject matter jurisdiction, it presents a question of law over which

---

[4] The court appointed a new guardian ad litem for the purposes of the plaintiff's motion to modify only.

our review is plenary. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition or affairs between the parties. . . . A case is moot when due to intervening circumstances a controversy between the parties no longer exists." (Internal quotation marks omitted.) *Barber* v. *Barber*, 193 Conn. App. 190, 220–21, 219 A.3d 378 (2019).

Here, the orders relating to custody and parenting time entered on May 26 and October 26, 2022, were superseded by the August 1, 2023 orders pertaining to custody and parenting time. Accordingly, there is no practical relief we can afford the plaintiff in her appeal of those earlier orders. The plaintiff nevertheless argues that her challenge to the custody and parenting time orders entered on May 26 and October 26, 2022, were not rendered moot by the August 1, 2023 orders. First, she contends that the August 1, 2023 orders address only parenting time,[5] not legal custody of the minor child. We disagree. In her motion to modify, the plaintiff sought modification of the court's October 26, 2022 "custody and parenting time orders." In stating that it was modifying parenting time only, the court seemingly acknowledged that the plaintiff was seeking a modification also of legal custody at that time and implicitly denied that requested relief. Indeed, in the motion to modify that the plaintiff sought leave to file on December 13, 2023, the plaintiff alleged that there was a substantial change in circumstances since the last court order granting sole legal custody to the defendant in that, inter alia, the parenting schedule between the parties and the child had been successful and without significant conflict. From this allegation, it is clear that the plaintiff considered the most recent order awarding sole legal custody of the minor child to the defendant

[5] The plaintiff concedes that she is not challenging the court's order regarding parenting time.

as the August 1, 2023 order, when the court implicitly denied her motion to modify as to legal custody. See *J. Y.* v. *M. R.*, 215 Conn. App. 648, 662, 283 A.3d 520 (2022) (interim custody and visitation orders became inoperative following issuance of subsequent orders wherein court " 'reiterat[ed]' " them or left them " 'largely unchanged' " and challenge to those interim orders therefore was moot and proper recourse was to challenge later orders). Insofar as the plaintiff challenges the court's legal custody order, her redress was to challenge the propriety of the August 1, 2023 order, which she has not done.

The plaintiff also argues that the July 31, 2023 hearing on her motion to modify "did not rectify the lack of a hearing in October, 2022." Even if we were to conclude that the court violated the plaintiff's right to due process without affording her a hearing before awarding the defendant sole custody of the minor child on October 26, 2022, that would not change the fact that the October 26, 2022 orders were superseded by the August 1, 2023 orders, and without a proper challenge to the August 1, 2023 orders, there is no practical relief that we may afford the plaintiff on her challenge to the October 26, 2022 judgment.

The plaintiff also contends that the "collateral consequences" exception to the mootness doctrine applies. "[T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not." (Internal quotation marks omitted.) *Putman* v. *Kennedy*, 279 Conn. 162, 169, 900 A.2d 1256 (2006). The plaintiff argues that, "[i]f the underlying decisions are left intact, the findings and stigma from

the decisions would threaten her reputation and livelihood.” The plaintiff’s argument in this regard is belied by the fact that the May 26, 2022 order was sealed by the court on the day it was issued.[6] On that basis, the plaintiff has not met her burden of demonstrating that there is a reasonable possibility that prejudicial consequences will occur if the May 26 and October 26, 2022 judgments are left intact.

Finally, the plaintiff argues that, even if her claim is moot, it is subject to appellate review under the “capable of repetition, yet evading review” exception to the mootness doctrine. “[F]or an otherwise moot question to qualify for review under the ‘capable of repetition, yet evading review’ exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot.” *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995).

[6] To the extent the plaintiff argues that her professional reputation may be harmed if the judgments at issue are allowed to stand because she shares a professional relationship with the department, the department has been involved with this family since 2016 when the plaintiff alleged the ultimately unsubstantiated allegations of sexual assault of the minor child by the defendant. We further note that the department investigated the plaintiff for emotional or psychological abuse of the minor child. Thus, the department is intimately aware of this family’s history.

Focusing on the second prong of the exception, the analysis "entails two separate inquiries: (1) whether the question presented will recur at all; and (2) whether the interests of the people likely to be affected by the question presented are adequately represented in the current litigation. A requirement of the likelihood that a question will recur is an integral component of the capable of repetition, yet evading review doctrine. In the absence of the possibility of such repetition, there would be no justification for reaching the issue, as a decision would neither provide relief in the present case nor prospectively resolve cases anticipated in the future. . . . The second prong does not provide an exception to the mootness doctrine when it is merely *possible* that a question could recur, but rather there must be a *reasonable likelihood* that the question presented in the pending case will arise again in the future . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *J. Y.* v. *M. R.*, supra, 215 Conn. App. 663.

As to the second prong of the exception, the plaintiff's argument is limited to asserting that "the same could happen to other parties in family courts." The plaintiff has not identified "the same" to which she is referring, and she entirely has failed to argue that there is a reasonable likelihood that the question presented in this case will arise again during the pendency of the limited period of time until this child reaches the age of majority. Accordingly, she cannot demonstrate that her claim is reviewable under the capable of repetition, yet evading review exception.

Although the plaintiff's challenges to the custody and parenting orders of the May 26 and October 26, 2022 judgments are moot, her challenges to the contempt findings of the court on May 26, 2022, are not moot because "the fact that a trial court has made a finding

of contempt may well affect a later court's determination of the penalty to be imposed after a future finding of contempt." *Keller* v. *Keller*, 158 Conn. App. 538, 543, 119 A.3d 1213 (2015), appeal dismissed, 323 Conn. 398, 147 A.3d 146 (2016). We therefore turn to the plaintiff's challenges to the court's contempt determinations.

We first set forth our standard of review. "First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Footnote omitted; internal quotation marks omitted.) Id., 545. "We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous. A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Kirwan* v. *Kirwan*, 187 Conn. App. 375, 393–94, 202 A.3d 458 (2019).

The plaintiff first challenges the court's judgments granting two motions for contempt filed by the defendant. Both of those motions—the first filed on November 19, 2019, and the other filed on December 10, 2020—allege that the plaintiff wilfully violated court orders that required the parties to engage in family counseling with the minor child in furtherance of reunification of

the minor child and the defendant.[7] The court found, as to both motions, that the plaintiff wilfully violated clear and unambiguous orders of the court. The plaintiff argues that the court's factual findings were clearly erroneous in that the plaintiff did comply with the court's orders or, alternatively, had reasonable grounds not to comply. She contends that "a legitimate basis existed for any reunification issues that arose, as the issues were caused either by the defendant or by circumstances beyond either [party's] control, and not by the plaintiff." She further contends that "[t]he record shows that the plaintiff did not thwart reunification, but rather complied with the court's orders, and the delays that did occur were not caused by the plaintiff." This claim is unavailing. The orders pertaining to reunification therapy, which have been entered numerous times beginning as early as 2017, have been clear and unambiguous in requiring both parties to participate in reunification therapy and cooperate fully with the therapy provider. The record is replete with evidence that the plaintiff repeatedly refused to do so, including evidence that she wilfully refused to comply with the court's March 11, 2019 and November 9, 2020 orders pertaining to reunification of the minor child and the defendant. To the extent that there may be evidence in the record that might support a different conclusion, that does not render the court's finding erroneous. Because there is evidence in the record to support the court's findings and we are not left with the conviction

---

[7] Specifically, in the November 19, 2019 motion for contempt, the defendant alleged that the plaintiff wilfully failed to comply with the court's March 11, 2019 orders that the parties participate in family intervention counseling to reunify the defendant and the minor child and that they follow all recommendations made by the therapist. In the December 10, 2020 motion for contempt, the defendant alleged that the plaintiff refused to take the minor child to therapy and thereby wilfully violated the court's November 9, 2020 order that the parties reengage the previous therapist and ensure that the minor child attends all therapy sessions and that the parties participate in the therapy at the therapist's direction.

that a mistake has been made, we conclude that the court's factual findings were not clearly erroneous and, therefore, that the court did not err in granting the defendant's motions for contempt.

The plaintiff also challenges the court's judgments granting two motions for contempt filed by the guardian ad litem—one filed on December 5, 2019, in which the guardian ad litem alleged that the plaintiff wilfully violated the court's order that the parties pay the fees of the guardian ad litem or arrange a payment plan for those fees, and the other filed on January 7, 2020, in which the guardian ad litem alleged that the plaintiff wilfully failed to comply with a subpoena requiring the plaintiff to produce certain documents. The plaintiff argues on appeal that "the court did not have the authority or jurisdiction to grant the motions" for contempt filed by the guardian ad litem because "[guardians ad litem] do not have authority to file motions, particularly motions for contempt about subpoena compliance." Because the plaintiff has not cited any legal authority to support this argument, we deem this claim inadequately briefed and we decline to review it. See *Pryor* v. *Pryor*, 162 Conn. App. 451, 458, 133 A.3d 463 (2016).

Finally, the plaintiff challenges the court's denial of her motion for contempt, filed on May 12, 2021, in which she alleged that the defendant violated the provision of the dissolution judgment that required him to pay for the cost of the minor child's private school tuition through high school. The plaintiff argues on appeal, and the defendant seems to agree, as do we, that the court erroneously found that the plaintiff misrepresented the terms of the dissolution judgment in her motion. The judgment does, in fact, provide that the defendant shall "pay for [the] cost of private schooling though graduation from high school." Because the court's denial of the plaintiff's motion for contempt was based upon its mistaken belief that the dissolution judgment did not

require the defendant to pay the cost of private school for the minor child through graduation from high school,[8] the judgment must be reversed and remanded for further proceedings on the plaintiff's May 12, 2021 motion for contempt.[9]

The appeal is dismissed with respect to the plaintiff's claims regarding the custody and parenting orders entered on May 26 and October 26, 2022; the judgment denying the plaintiff's May 12, 2021 motion for contempt is reversed and the case is remanded for further proceedings; the judgments are affirmed in all other respects.

In this opinion the other judges concurred.

---

[8] We reject the plaintiff's contention that the court's erroneous finding in this regard undermined its other findings and rulings.

[9] We emphasize that the scope of the remand is limited to the issue of whether the defendant wilfully violated the provision of the dissolution judgment requiring him to pay for the cost of private school for the minor child until he graduates from high school.